Civil Action No. 21-mc-00178-LDH

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
————————————————————x

*In re:*                                                  Chapter:  7

SEAN M. MURRAY                                Bankruptcy Case No. 17-44157

                    Debtor Pro Se                Adv. Pro. No. 18-01141

————————————————————x

SEAN M. MURRAY

                    Appellant,

          *-against-*

SPECIALIZED LOAN SERVICING, LLC, et. al,

                    Defendants

————————————————————x


# SEAN M. MURRAY Appellant Opening Brief


SEAN M. MURRAY
P.O. Box 1110
Albany, New York 12201
917.330.9284  smm333@gmail.com

# Table of Contents

Page

**Jurisdictional Statement**………………………………….…...4

**Introduction**…………………………………………….…5

**Background**……………………………………….……7

**Standard of Review**………………………...……15

**Issues Presented**…………………………………...16

**Argument Summary**……………………………………17

**Arguments**…………………………………………...18

## Cases and Statutes

**28 U.S.C. § 1334(a)**………………………………...……….....4

**28 U.S.C. §157 (a)**…………………………………...……….4

**28 U.S.C.§ 158**……………………………………….….....4

**Judiciary Code Sections 157(b)(1) and 1334(b)**……………...…………………….4

**28 U.S.C. § 1409**……………………………………...……….…….4

**28 U.S.C. § 157(b)(2)(A), (B), (K)**………………...……….4

**Stern v. Marshall, 564 U.S. 462, 499 (2011)**……………...………...4

**Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, __, 135 S. Ct. 1932, 1940 (2015)**

**('RPAPL') Article 15" (R 1 ¶ 1)**……………...….………………5

**Real Estate Settlement Procedures Act ("RESPA")**…………………...…...7

**Regulation X  12 C.F.R. § 1024.36 (Section 5 of RESPA)**……………...……...7

In re Vincent Andrews Mgmt. Corp., 507 B.R. 78, 81 (D. Conn. 2014)……..…….....…15

(quoting In re Charter Commc'n, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012)….……….15

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)………….…...……...……15

United States v. Hinkson, 585 F. 3d 1247, 1261-63 (9th Cir. 2009)…………...…...…..15

 Hinkson, at 1263………..…...……..…...……………………...……...……...……….15

477 U.S. at 248……………………………………………………………………………15

Jeffreys v. City of New York,426 F.3d 549, 553 (2d Cir. 2005)……….…...……...……15

Anderson, 477U.S. at 248………………………………………………………………..15

 Anderson, 477 U.S. at 250 n. 4……………………………………..…...……...……...16

 CPLR 3408………..………………………………………………………....……...…..19

Flagstar Bank, FSB v. Walker, 946 N.Y.S.2d 850, 854 n.6 (Sup. Ct. 2012)….……….19

U.S. Bank, N.A. v. Shinaba, No. 381917-09, slip op. at 9 (N.Y. Sup. Ct. July 31, 2013)…19

Wells Fargo Bank, N.A. v. Ruggiero, No. 19322-07, slip op. at 7-8 (N.Y. Sup. Ct. May 29,
2013)……………………………………………………………………………………….19

One W. Bank, FSB v. Greenhut, 957 N.Y.S.2d 265 (Sup. Ct. 2012)………………….19

Davis v. Hollins Law Firm, _F.3d _, 2016 WL 4174747 (9th Cir. Aug. 8, 2016)………19

 15 USC § 1692e…………………………………………………………………………20

April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 816, 195 Cal. Rptr. 421, 425 (1983);

 Harm v. Frasher, 181 Cal.App. 2d 405, 417, 5 Cal.Rptr. 367, 374 (1960)……………20

Witkin, Summary of California Law, Contracts, §744 (8th ed.)………………………20

Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App. 4th 299, 314, 61 Cal. Rptr.
2d 614 (1997)……………………………………………………………………………20

Harm v. Frasher, 181 Cal.App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960)………………20

Wood v. Lucy, Lady Duff – Gordon, 222 N.Y. 88 (1917)………………………………20

18 U.S. Code § 1028……………………………………………………………………22

In re 11 East 36th, LLC 1:15-cv-01541 SDNY………………………………………22

UCC § 9-502(a)…………………………………………………………………………23

UCC § 9-506……………………………………………………………………………23

UCC § 9-503(a)…………………………………………………………………………23

UCC § 9-502 (e)……………………………………………………………………23

Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 500; Israelson v Rubin,

20 AD2d 668, affd 14 NY2d 887; Lamberta v Long Is. R. R., 51 AD2d 730……………24

12 CFR 226.10(a), Regulation Z……………………………………………………27

§ 1026.36(c)(1)(i)…………………………………………………………………27

§ 1026.36(c)(1)(ii)…………………………………………………………………27

Part 419 Conduct of New York State Business Rules………………………………27

Former Official Interpretations to Reg. Z, ¶ 36(c)(1)(i)-2; 73 Fed. Reg. 44,522, 44,614…27

(July 30, 2008).

Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-1; 73 Fed. Reg. 44,522, 44,614 (July

30, 2008)…………………………………………………………………………27

Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-2; 73 Fed. Reg. 44,522, 44,614 (July

30, 2008)…………………………………………………………………………27

Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-3; 73 Fed. Reg. 44,522, 44,614 (July

30, 2008). …………………………………………………………………………27

15 U.S.C. § 1639f(a)………………………………………………………………27

15 U.S.C. § 1639f(b)………………………………………………………………27

16 Reg. Z 12 C.F.R. §§ 1026.36(c)(1)(i)………………………………………………27

1026.36(c)(1)(iii)…………………………………………………………………27

15 USC § 1639f……………………………………………………………………27

15 USC § 1666c……………………………………………………………………28

UCC 3-603(b)………………………………………………………………………28

New York State Real Property Actions and Proceedings Law ("RPAPL") § 1921……28

New York Real Property Law ("RPL") § 275……………………………………………28

Matzger v. Page, 62 Wash. 170, 113 P.254 (1911)……………………………………29

Kentucky Virginia Stone Co. v. Fortner, 159 Va. 234, 165 S.E. 401 (1932)……………29

J. WHITE & R. SUMMERS, HANDBOOK OFTHE LAW UNDER THE UNIFORM

COMMERCIAL CODE §§ 13-18, at 443 (1972)………………………………………29

Comment, The Law of Tender in Texas, 29 BAYLOR L, REv. 325 (1971)……………29

## Jurisdictional Statement

1.The district courts have original and exclusive jurisdiction over all bankruptcy "cases." 28 U.S.C. § 1334(a). Cases are referred to the bankruptcy court pursuant to 28 U.S.C. §157 (a) and then they are rerouted back to the district court for appellate review under 28 U.S.C.§ 158. This appeal is "from the interlocutory summary judgment" of the bankruptcy court adversary proceeding.

2.This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

3."Core proceedings include, but are not limited to . . . matters concerning the administration of the estate;" "allowance . . . of claims against the estate," and "determinations of the validity, extent, or priority of liens;" among other types of claims. 28 U.S.C. § 157(b)(2)(A), (B), (K). And as core matters, this Court has constitutional authority to enter a final judgment, because Mr. Murray's claims stem "from the bankruptcy itself." Stern v. Marshall, 564 U.S. 462, 499 (2011).

4.To the extent that the matters are not core proceedings pursuant to Judiciary Code Section 157(c), Mr. Murray has indicated his consent to this Court entering a final judgment in the Complaint. Compl., ECF No. 1 ¶ 8. SLS and Nationstar have also consented to this Court entering a final judgment. Dec. 3, 2020 Hearing Tr. at 5:22-6:02, 10:15-21. See Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, ___, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-

core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding").

## Introduction

5.The adversary proceeding at issue began on December 21, 2018, when the Plaintiff-Appellant filed a complaint, ( R. 1) against Nationstar Mortgage LLC dba Mr. Cooper ("Nationstar") and Specialized Loan Servicing LLC ("SLS"), and unnamed John and Jane Doe Corporations and Entities.

6.The Complaint states the action is brought "pursuant to New York Real Property Actions and Proceedings Law ('RPAPL') Article 15" (R 1 ¶ 1) seeking a declaratory judgment avoiding, canceling, and discharging the note and mortgage of record referred to below, and attacking the nature extent and validity of such lien which affects the real property . . . and preserving them for the benefit of the Debtor's estate.

7.The first claim for relief (R. 1 ¶ 41-45) seeks a declaration that there is no amount due under the mortgage on the proprietary shares in a cooperative living corporation and lease securing tenancy in 35-21 79th Street, Unit 4E, Jackson Heights, NY 11372 (the "Property").

8.The second claim for relief (R. 1 ¶ 46-52) seeks a declaration that Plaintiff-Appellant holds exclusive title to the Property.

9.The third and "consolidated" claim for relief (R. 1 ¶ 52-56) incorporates opposition and motions for contempt, sanctions, lost wages, costs, fees, and actual, treble, punitive, and statutory damages.

10.By order (R. 45) dated December 15, 2020, the bankruptcy court entered judgment against Plaintiff-Appellant on each claim.

11.On January 14, 2021, Plaintiff-Appellant filed a motion (Dkt 1) for leave to appeal the bankruptcy court's December 15, 2020 order granting Specialized Loan Servicing, LLC's motion for summary judgment, pursuant to 28 U.S. Code § 158(a)(3).

12.On March 8, 2021 Fay Servicing, LLC filed a letter (Dkt 3) requesting clarification of the Court's March 2, 2021 order.

13.On Mar 26, 2021 Plaintiff-Appellant's motion for leave to appeal the bankruptcy court's interlocutory order was GRANTED.

14.On March 15, 2021 Specialized Loan Servicing, LLC was directed to respond to Plaintiff's motion for leave to appeal the bankruptcy court's interlocutory order.

15.On March 22, 2021 Fay Servicing, LLC as servicer for US Bank Trust National Association filed a REPLY OF FAY SERVICING, LLC IN RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND OR APPEAL (Dkt 4) in Opposition re 1 MOTION for Leave to Appeal Bankruptcy Court case number 1-18-01141.

16.The Reply was signed by Robert W. Griswold Bankruptcy Attorney LOGS Legal Group LLP f/k/a Shapiro, DiCaro & Barak, LLC Attorneys for Fay Servicing, LLC as servicer for US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust.

17.Plaintiff-Appellant filed a Apr 12, 2021 Letter MOTION for Extension of Time to File Opening Brief as per March 26, 2021 Electronic Order.

18.On Apr 14, 2021 Plaintiff-Appellant's motion 6 for extension of time to file was GRANTED.

19.On Apr 23, 2021 Plaintiff-Appellant's motion 7 for extension of time to file was GRANTED. Directing Plaintiff-Appellant's opening brief shall be due May 10, 2021.

## **Background**

20. Plaintiff-Appellant discovered that advances and attorney's fees were being incorrectly and fraudulently added to the subject mortgage account in late 2013 early 2014.

21. This was subsequently confirmed by the mortgage servicer in a telephone conversation on May 7, 2014 with Carolyn Strozyk of Customer Service.

22. This conversation is memorialized in a letter (Ex. A) from Carolyn Strozyk, Director, Mortgage Service Center, Customer Service, confirming the call, the subject of which was the amounts added to the mortgage account by the coop as corporate advances.

23. On June 6, 2014, Plaintiff-Appellant sent a qualified written request ("QWR") disputing the account. The servicer spent nearly two months to disclose the ownership of the loan and copies of documents.

24. Plaintiff-Appellant's June 6, 2014 notice informed the servicer of Plaintiff-Appellant's claims of conversion of the original instrument of indebtedness and breach of the mortgage contract for failure to validate or correct the corporate advances added to the mortgage account.

25. The Real Estate Settlement Procedures Act ("RESPA") and its implementation Regulation X 12 C.F.R. § 1024.36 (Section 5 of RESPA) only allows ten days for responding to requests for the ownership of the loan, and not later than 30-45 days for other requests for information.

26. HSBC MORTGAGE CORPORATION, HSBC BANK USA N.A., MORTGAGE SERVICE CENTER, and PHH MORTGAGE CORPORATION failed and refused to respond as required by RESPA to Appellant's QWR RFI NOE.

27. This is evidenced by letters (Ex. B) dated June 24, 2014, August 5, 2014 and two August 7, 2014 letters referencing a June 11, 2014 QWR letter sent June 6, 2014. The letters were on

HSBC letterhead and signed by representatives of PHH MORTGAGE CORPORATION as servicing agent for HSBC.

28. Plaintiff-Appellant rescinded for cause of the Power of Attorney granted to HSBC at the closing March 20, 2008, as acknowledged by the September 8, 2014 letter (Ex. C) signed by Jana Hunt of Mortgage Service Center.

29. The RESPA violation and servicer failure and refusal to address the corporate advances is evidenced by ledgers (Ex. D) showing the advances on the account dated January 8, 2015 and sent September 21, 2015 in response to Plaintiff-Appellant's September 10, 2015 grievance letter.

30. A requested a payoff quote from HSBC (Ex. E) dated June 7, 2014, detailed the current balance at $169,271.90 including total interest of $1,073.94 and "Recoverable Balance" of $5,706.56 for a total amount due as of June 10, 2014 of $176,122.56.

31. The payoff statement confirmed the ledger (Ex. D) featuring the corporate advances added to the mortgage account and put Plaintiff-Appellant on notice of a change in servicer that went without notification to Plaintiff-Appellant as required under RESPA. The payoff statement stated that a Wells Fargo Bank account was to receive payoffs on behalf of Mortgage Service Center.

32. Plaintiff-Appellant's grievance letter and notice of claim in recoupment and was incorporated into New York State Attorney General Office of Consumer Frauds complaint against the conduct and unresponsiveness of the mortgage servicers to the accounting errors on September 11, 2015.

33. The New York State Attorney General's Office confirmed receipt of the complaint in a September 23, 2015 letter (Ex. F) signed by Elizabeth Rodgers of the Bureau of Consumer Frauds and Protection.

34. The Attorney General's Bureau of Consumer Frauds and Protection policy to intervene in a dispute resulted in both the law firm representing the servicer and the servicer responding to the complaint and grievance under penalty of perjury. The law firm responded by disparaging Plaintiff-Appellant and the Pro Se efforts to address the issues presented in the QWRs and grievance.

35. Attorney David P. Case, Esq., of FEIN, SUCH & CRANE, LLP wrote on behalf of the Law Firm representing the servicers at the time in a letter addressed to Ms. Rodgers of the Bureau of Consumer Fraud dated October 5, 2015.

36. Attorney Case's letter notably references the subject property as "Shares of Stock and Proprietary lease that allows Mr. Murray to possess the premises commonly known as 35-21 79th Street Unit 4E, Jackson Heights, New York 11372."

37. Ms. Rodgers wrote Plaintiff-Appellant November 12, 2015 and included the law firm and servicer's responses to the investigation (Ex. G).

38. PHH Mortgage Corporation as servicing agent for HSBC responded to the AG's investigation by providing Ms. Rodgers with confirmation of a cease and desist on the account.

39. HSBC sent Plaintiff-Appellant a letter (Ex. H) on October 19, 2015, giving notice of an unrequested change of address on the account from: Sean Murray, 35-21 79TH STREET 4E, JACKSON HEIGHTS NY 11372 to: ATTN: COMPLEX TEAM SV01, 1 MORTGAGE WAY, MOUNT LAUREL, NJ 08054.

40. Plaintiff-Appellant corresponded through counsel with the servicer in December of 2015, attempting to change the title on the Shares and Lease to a Revocable Trust. The trust and the full

payoff were the subjects of Trustee McCord's January 9, 2018 withdrawn[1] rule 2004 request for

examination of the debtor in Plaintiff-Appellant's underlying Bankruptcy proceeding. (EDNY

BK 18-01141-ess Dkt 28)

41. HSBC responded December 21, 2015 by providing (Ex. I) the affidavit, signature and

Acknowledgment form for living trusts and subsequent rejection without sufficient explanation.

42. Nationstar Mortgage LLC ("Nationstar") acquired servicing in December of 2016.

43. Nationstar's adversary proceeding discovery responses to Plaintiff-Appellant's demands show

all correspondence regarding the mortgage account was addressed to the fraudulent PHH

Mortgage Corporation, 1 Mortgage Way, Mount Laurel, NJ address (Exhibit G), giving Plaintiff-

---

[1] Mr. McCord,
SEAN M. MURRAY P.O. Box 1110
Albany, N.Y. 12201-1110
Sent Via Email: rmccord@certilmanbalin.com
Re: SEAN M. MURRAY Chapter 7 Bankruptcy Case No: 117-44157-ess

I have received your request dated October 5, 2017 and have provided the explanation below and attached bank statements to the email accompanying this response.
The correspondence referenced in your letter from Chandler Williams of Mr. Cooper (Nationstar) to Bonnie Filip of NYS Department of Financial Services dated August 22, 2017, describes a third party payment made on my behalf from what I understand to be a restricted book-entry securities account that I do not control and have been unsuccessful at communicating and perfecting a security interest in and entitlement to with respect to any potential adverse claim I may have in the investment property.
The third party payment, to my knowledge, has not been returned and in my view the bank would be the appropriate party to answer the questions posed in your letter, or explain their response to the NYS DFS. As I am not an attorney or cpa, nor received advice of counsel with respect to this issue, my articulation of the source of funds may be lacking. However, the documentation and statements made by Nationstar, Mr. Cooper or their representatives or attorneys have been, in my view, false and misleading at best, and at worst, representative of possible violations of Title 18 of the United States Code sections 656 and 894. The debt in question has not been verified or substantiated. The letter to Bonnie Filip states they received payment August 15, 2017 and the return receipts signed by representatives of Gross Polowy LLC and Nationstar are dated August 10, 2017 (making the payment complete, valid and not a short payoff). Compliance with Part 419 Conduct of New York State Business Rules would require the servicer to apply partial payment. The contract address they repeatedly reference in their correspondence and documentation is PHH Mortgage Corporations' 1 Mortgage Way, Mount Laurel New Jersey address. It is my position that the documentation and facts mentioned above are evidence of knowing and egregious violations of Federal and New York State Debt Collection Procedure, FCRA, RESPA and TILA, and contain false and misleading statements, simulations of legal or judicial process and sanctionable ethical and professional misconduct. The bank has also potentially violated Title 11 United States Code section 362.
Please find the bank statements requested also attached to the email containing this letter.
SEAN M. MURRAY

Appellant no notice of the servicer change or change in cease and desist HSBC referred to in response to the NYS AG complaint.

44.Gross Polowy LLC, as attorney for Nationstar, first corresponded with Plaintiff-Appellant June 13, 2017 giving notice (Ex. J) of an unpaid balance totaling $228,360.72, that including, among other charges, $24,408.43 in Condo/HOA dues. The subject property is a Cooperative Living Corporation not a Condo with HOA dues. These additional amounts continued being added to the mortgage account without explanation of the accounting or validation, verification or substantiation of the debt as requested and required by the Fair Debt Collection Procedures Act.

45.Plaintiff-Appellant issued a QWR noticing Nationstar of the error and requesting information regarding the acquisition of servicing after the NYS AG complaint and cease and desist sent in response by HSBC.

46.Gross Polowy LLC and Nationstar were unresponsive to the QWR, and Nationstar subsequently refused to issue a payoff statement despite Plaintiff-Appellant's formal request. (Ex. K)

47.Immediately following Plaintiff-Appellant's registering of a CFPB complaint, Gross Polowy LLC emailed a payoff statement (Ex. S) for $238,176.40 including but limited to $24,408.43 in fraudulent Condo/HOA Dues and $15,279.48 in unauthorized  late fees, attorneys fees and escrow advances. Nationstar later issued a payoff statement addressed to Gross Polowy LLC at the PHH Mortgage Corporation address fraudulently associated with the mortgage account.

48.Plaintiff-Appellant executed a grievance letter dated July 21, 2017. (Ex. L)

49. The July 21 grievance was forwarded to the New York State Attorney Generals Office of

Consumer Fraud, who referred the complaint to the New York State Department of Financial

Services ("DFS"). (Ex. M)

50. Nationstar Customer Relations Specialist, Chandler Williams, responded to the complaint in a

letter (Ex. N) dated August 22, 2017 addressed to Bonnie Filip of the DFS.

51. Nationstar's letter[2] to the DFS sought to explain Plaintiff-Appellant's complaints regarding

the full payoff quote refusal and the subsequent mishandling of the tendered full payoff.

52. Plaintiff-Appellant filed a bankruptcy petition August 10, 2017 that was discharged December

8, 2017. (EDNY BK 18-01141-ess Dkt 1, 24)

53. On December 13, 2017 Nationstar moved for relief from stay (EDNY BK 18-01141-ess Dkt

26) to foreclose without filing a proof of claim. Plaintiff-Appellant's Opposition to that motion is

incorporated into the adversary proceeding through the consolidated claims for relief. (R. 1 ¶

15c)

54. Nationstar then sold the servicing to Specialized Loan Servicing ("SLS") December 17, 2017

pending the hearing on Nationstar's motion for relief from stay and without notice to the

bankruptcy court, trustee or debtor (Plaintiff-Appellant).

---

[2] The letter stated in part: "Our records do not reflect any error regarding the information provided to him in the subject phone calls. Please note that a payoff request may not be completed in the same day, as we must request the appropriate fees and costs so that a correct Payoff Statement can be calculated…Gross Polowy's response to Mr. Murray on August 2, 2017, responded to all of his concerns regarding the foreclosure file and notices that have been sent to him under New York State law…Our records reflect we are appropriately servicing the account in accordance with New York State law…Upon further review, Mr. Murray filed a voluntary petition under a Chapter 7 Bankruptcy on August 10, 2017. As such, the foreclosure has been placed on hold and the scheduled foreclosure sale date has been removed. Our records further reflect that a short payoff of $238,176.42 was received on August 15, 2017. It was determined that the above amount received was $309.78 short of a full payoff. Please note that a full payoff must be received in order to apply the funds to the account. As such, please note the $238,176.42 is being returned. A Transaction History is enclosed for review…Our records indicate Federal Home Loan Mortgage Corporation (Freddie Mac) is the current owner of the loan."

55.Plaintiff-Appellant filed opposition and application for loss mitigation in the bankruptcy
(EDNY BK 18-01141-ess Dkt 31-32) on January 15, 2018 which was granted February 23, 2018
with respect to Nationstar dba Mr. Cooper. (EDNY BK 18-01141-ess Dkt 34)

56.SLS sent Plaintiff-Appellant a February 13, 2018 notice of auction of the subject Shares and
Proprietary lease (Ex. O) representing Nationstar as the secured creditor despite the UCC 3
assignment dated December 17, 2017 naming SLS as secured creditor.

57.SLS's February 13, 2018 letter deprived Plaintiff-Appellant of the 90 day New York State
pre-foreclosure notice ("RPAPL 1304 notice") and the change in servicer notice required by
RESPA.

58.The consolidated motions representing Plaintiff-Appellant's Third Claim for Relief in the
adversary complaint (R. 1 ¶ 52-56) address both Defendants efforts to game the Pro Se Debtor
(Plaintiff-Appellant) while dual-tracking the mortgage by filing for relief from stay in the name
of one servicer and transferring servicing to SLS who, scheduled a non-judicial auction of the
property without notice, or filing a proof of claim in the bankruptcy proceeding, in violation of
the bankruptcy courts Loss Mitigation rules and orders dated February 23, 2018 and April 10,
2018. (EDNY BK 18-01141-ess Dkt 34, 55)

59.Plaintiff-Appellant and Gross Polowy LLC entered settlement discussions with respect to
several motions for contempt and sanctions and orders to show cause resulting in the subject
settlement agreement. (EDNY BK 18-01141-ess Dkt 82)

60.Plaintiff-Appellant's Opposition (R. 33) to SLS's Motion for Summary Judgement (R. 28) in
the Adversary Proceeding details the identity theft in more detail and provides exhibits of the
Lexis Nexis Credit Report featuring the Securities License applied for with the identity theft

address and SSN and the reporting to the IRS of a loan originating in 2016 with much different

principal balance information than provided to the court.

61. In SLS's MSJ (R. 28 ¶ 45-52), Counsel for SLS, Robert W. Griswold, Esq., makes reference

to the issue of party in interest and then signs the pleading as Attorney for Nationstar Mortgage

LLC as Servicer for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for

Home Equity Loan Trust 2007-FRE1.

62. This was explained as a typo and represents the third servicer Attorney Griswold purports to

represent in the same proceedings (SLS, Fay and Nationstar). Either Attorney Griswold is

confused or the parties are engaged in violations of 15 U.S.C. § 1641 (f)(2).

63. Attorney Griswold filed an Affidavit Re: Possession (R. 37) on behalf of SLS May 26, 2020,

purporting to have in hand possession of the note.

64. Plaintiff-Appellant objected to the lack of timeliness in filing the affidavit after the motion for

summary judgement was filed and opposed at the hearing conducted  June 2, 2020 transcript.

(Tr. 2020-06-02 pg 6 16 to pg 7 line 9)

65. Plaintiff-Appellant added SLS to the grievance letter October 1, 2020. (R. 48 Ex. B) SLS was

unresponsive to the subsequent NYS Department of Banking investigation of the October 1,

2020 grievance letter. Nationstar responded claiming (R. 48 Ex A) to now be the servicer, in

conflict with their filings in the adversary proceeding. (R. 28, 34, 37-39, 42-43)

66. The DFS sent a response (Ex. Q) dated February 16, 2021 to Plaintiff-Appellant's October

2020 complaint (R. 48 Ex. B) from Elavon, a party with no known relationship to the payoff or

Plaintiff-Appellant. Their response included a incomprehensible and inapplicable ledger of

accounting and chargeback, clearly unresponsive to Plaintiff-Appellants complaint (R. 48 Ex. B)

regarding the tendered full payoff of August 10, 2017.

## Standard of Review

67."Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual

findings for clear error and its conclusions of law de novo." In re Vincent Andrews Mgmt. Corp.,

507 B.R. 78, 81 (D. Conn. 2014) (quoting In re Charter Commc'n, Inc., 691 F.3d 476, 482-83 (2d

Cir. 2012)). However,"[a] grant of summary judgment is reviewed de novo by the appellate

court."

68. If the court failed to apply the correct legal standard then it has "necessarily abuse( d) its

discretion" Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

69.The abuse of discretion test involves two distinct determinations: first, whether the court

applied the correct legal standard; and second, whether the factual findings supporting the legal

analysis were clearly erroneous. United States v. Hinkson, 585 F. 3d 1247, 1261-63 (9th Cir.

2009).

70.Factual findings are clearly erroneous if they are "illogical, implausible, or without support in

inferences that may be drawn from the record" Hinkson, at 1263.

71.A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit

under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York,426

F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." Anderson, 477U.S. at 248.

72.The moving party bears the initial burden of demonstrating that there is no genuine issue of

material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S.

at 250 n. 4. The failure to meet this burden warrants denial of the motion. Id. However, in the event this initial burden is met, the opposing party must then show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

### **Issues Presented**

A. Did the Court err in its application, interpretation and construction of Plaintiff's Pro Se pleadings?

B. Did the Court err by not incorporating a more liberal construction of Plaintiff's pleadings in support of a conclusion that Defendant SLS has failed and refused to litigate in good faith, in breach of contract and code of conduct?

C. Did the Court err in its conclusion regarding SLS's Lien Perfection and independently that the inadequate description of collateral in the financing statement constituted a minor error that was not seriously misleading?

D. Did the Court err in the untimely incorporation and consideration of the controverted Griswold Affidavit of Possession?

E. Did the Court err in its conclusions regarding the scope, extent and applicability of the Settlement Agreement between Plaintiff, SLS and Gross Polowy LLC?

F. Did the Court err in its conclusions regarding Plaintiff's Tender of Payment in full made subject to a Payoff Statement prior to the bankruptcy petition, and independently whether tender of payment discharges the underlying debt and whether returned payment renders the underlying security interest unenforceable?

G.  Did the Court err in its conclusions that the "New Assertions" that Plaintiff

raises in his Opposition and Supplemental Opposition to SLS's Motion for Summary

Judgment do not amount to claims incorporated into the complaint through the

Consolidated Motions against SLS in this adversary proceeding, and independently

whether Plaintiff is entitled to amend claims in the Adversary Complaint to

incorporate the "New Assertions".

## **Argument Summary**

73. The Bankruptcy Court made three errors in the decision and order on SLS's Motion for

Summary Judgement.

74. First, it gave undue weight to heresy evidence in considering the servicer's letters (R. 41 Ex.

D, E) to the trustee. The trustee had an adverse interest in the debtor's estate and the servicer's

letters to the trustee in explanation of the full tender and payoff of August 10, 2017 contradicted

both by the servicer's response to the New York State Department of Financial Services (R. 41

Ex. B) explaining incorrectly that the payment was received 5 days late rendering the payoff

$300 short, and an accounting ledger (R. 41 Ex. G) provided by Nationstar in response to

discovery demands.

75. Second, the Bankruptcy Court applied the seriously misleading standard in determining

whether the name of the Cooperative Living Corporation in the collateral description of the

UCC-1 financing statement securing the mortgage. Plaintiff-Appellant argues the nature of the

subject property has been misrepresented as real property to justify evaluating the financing

statement's perfect of interest. Personal property description of collateral that are non-existent

and differ from the security agreement do not perfect an interest or secure in the subject property.

76. Third the court failed to construe the "New Allegations" as incorporated consolidated relief sought against SLS and Nationstar for personal liability for continued acts of identity theft and fraud with respect to the misrepresentations regarding the tendered full payoff and the cease and desist address change.

## <u>Arguments</u>

### A.  Did the Court err in its application, interpretation and construction of Plaintiff's Pro Se pleadings?

**Preservation on Appeal:**

77. This issue is preserved by the Bankruptcy Court summary judgement order. (R. 50,51)

78. Appellant raised the issue of the parties bad faith conduct and alleged coordinated campaign to  delay the proceedings throughout the hearings on the opposition to summary judgement and thought the incorporated claims for relief and request for declaratory relief as outlined in the Complaint. (R. 1)

**Discussion:**

79. The Bankruptcy Court made reference to Appellant's Pro Se status but did not include the liberal standard approach when considering Appellant's requested declaratory relief incorporating the totality of the conduct represented by the lack of a response to Appellant's original grievance letter under the mortgage contract with HSBC and the unilateral change of address resulting in the theft of Appellant's identity and use of the address to simulate legal process by engaging in two separate non-judicial foreclosure auction attempts without notice to the Appellant. The consolidated motions are not resolved to the extent SLS and Nationstar are employing a legal strategy to avoid dual tracking and mortgage servicer fraud allegations supporting a view of

breach of contract founded in part on the piercing the corporate veil approach to alter ego liability.

**B.   Did the Court err by not incorporating a more liberal construction of Plaintiff's pleadings in support of a conclusion that Defendant SLS has failed and refused to litigate in good faith, in breach of contract and code of conduct?**

**Preservation on Appeal:**

80.This issue is preserved by the Bankruptcy Court summary judgement order. (R. 50,51)

81. Appellant raised the issue of the parties bad faith conduct and alleged coordinated campaign to delay the proceedings throughout the hearings (Tr. BKNYED00565 2020-06-02) (Tr. BKNYED00567 2020-06-02) (Tr. 49 pg 6-9) on the opposition to summary judgement and through incorporated claims for relief and request for declaratory relief as outlined in the Complaint. (R. 1)

**Discussion:**

82.For purposes of CPLR 3408, "[c]onduct such as providing conflicting information, refusal to honor agreements, unexcused delay, unexplained charges, and misrepresentations [during settlement conference proceedings] have been held to constitute 'bad faith.'" Flagstar Bank, FSB v. Walker, 946 N.Y.S.2d 850, 854 n.6 (Sup. Ct. 2012); U.S. Bank, N.A. v. Shinaba, No. 381917-09, slip op. at 9 (N.Y. Sup. Ct. July 31, 2013); Wells Fargo Bank, N.A. v. Ruggiero, No. 19322-07, slip op. at 7-8 (N.Y. Sup. Ct. May 29, 2013); One W. Bank, FSB v. Greenhut, 957 N.Y.S.2d 265 (Sup. Ct. 2012).

83.The Court in *Davis v. Hollins Law Firm, _F.3d _, 2016 WL 4174747 (9th Cir. Aug. 8, 2016)* observed that the overarching purpose of the FDCPA "is to prevent debt collection actions that frustrate consumers' ability to chart a course of action in response to a collection effort."  Id. at

84. 15 USC § 1692e prohibits the "false, deceptive, or misleading representation or means in connection with the collection of any debt."

85. The Second Circuit has noted that "[a]lthough courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss."

86. The Duty of Good Faith and Fair Dealing imposes on each party to the contract the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose. April Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 816, 195 Cal. Rptr. 421, 425 (1983); Harm v. Frasher, 181 Cal.App. 2d 405, 417, 5 Cal.Rptr. 367, 374 (1960).

87. A party to a contract breaches the implied covenant of good faith and fair dealing by interfering with or failing to cooperate with the plaintiff in the performance of the contract. Witkin, Summary of California Law, Contracts, §744 (8th ed.); see also Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997); Harm v. Frasher, 181 Cal.App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960).

88. It is widely recognized that New York was the first jurisdiction to identify the duty of good faith and fair dealing as an implied covenant that made a contract enforceable. See Wood v. Lucy, Lady Duff – Gordon, 222 N.Y. 88 (1917).

89. Both Defendants in the adversary proceeding have produced documentation in discovery evidencing use of the fraudulent PHH MORTGAGE 1 MORTGAGE WAY in a the theft of Plaintiff-Appellant identity for the purposes of Mortgage Servicer Fraud.

90. The transcript dated July 22, 2019 (Tr. BKNYED00563 2019-07-22 pg 5 lines 8 to pg 7 line 3) contains a brief exchange illustrating the Plaintiff-Appellant's many and varied attempts to hold the Defendants to the same standard Plaintiff-Appellant was to be held to. Repeatedly, meritorious objections were ignored or brushed aside. The court stated in response to a clarification requested by the Debtor regarding a local rule conflicting with the Federal Rules of Procedure that "I think the district may have opted out of those restrictions, but it was a long time ago that I was a litigator, so — in all events, I always encourage parties to focus more — or at least as much on the substance of the requests as in the counting them up and seeing if the number is twenty-four or twenty-six or thirty-seven or whatever."  And, "Well, so has — let's try to focus on the substance here, because that's going to help us prepare for trial."

91. (Tr. BKNYED00563 2019-07-22 page 11 lines 8 through 18,) The court overruled Plaintiff-Appellant's objection to late discovery responses from Nationstar, despite Plaintiff-Appellants objection. (Tr. BKNYED00563 2019-07-22 page 12 line 22 through 24)

92. The court stated (Tr. BKNYED00563 2019-07-22 page 18 lines 17 through 22) that "Summary Judgement comes after working out a discovery schedule. Summary Judgement typically comes after discovery is complete."

93. Despite this statement and Plaintiff-Appellant requesting that Defendants be compelled to produce and complete Discovery, the court reversed it's position.

94. On page 14 lines 7 through 25 and page 15 lines 1 through 25 detail an interaction where the court accused the Plaintiff-Appellant of editing Exhibits offered as evidence of late submission of discovery demands, only to realize the court was mistaken, and despite Plaintiff-Appellant's point regarding equal treatment of the parties, the court allowed the late discovery anyway.

95.18 U.S. Code § 1028 - Fraud and related activity in connection with identification documents,

authentication features, and information (a) Whoever, in a circumstance described in subsection

(c) of this section—(7) knowingly transfers, possesses, or uses, without lawful authority, a means

of identification of another person with the intent to commit, or to aid or abet, or in connection

with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony

under any applicable State or local law;

96.Mortgage servicing fraud generally involves the diversion or misuse of principal and interest

payments, loan prepayments, and/or escrow funds for the benefit of the service provider.

**C.      Did the Court err in its conclusion regarding SLS's Lien Perfection and
         independently that the inadequate description of collateral in the financing
         statement constituted a minor error that was not seriously misleading?**

**Preservation on Appeal:**

97.This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary

judgment order and Tr. BKNYED00565 2020-06-02.

**Discussion:**

98.A security agreement cannot perfect collateral that is not described in the financing statement.

Existence of collateral in a security agreement without the corresponding inclusion in the

financing statement will not perfect a claim, because a security agreement cannot "perfect"

anything.

99.This principle is illustrated by a 2015 case, In re 11 East 36th, LLC.

> In that case, the debtor granted a security interest in its membership interest in its
> subsidiary. The financing statement, however, neglected to include the
> membership interest in its description of the collateral. In the debtor's bankruptcy
> case, the court held that the secured party's lien on the membership interest was

unperfected and subject to avoidance, because the membership interest was not
listed in the financing statement as a part of the collateral.

100. SLS acknowledges that the correct name of the tenants corporation is "35-21 79 St Tenants

Corp," and that the name as set forth in Section 4 of the UCC-1 Financing Statement is "235-21

79 St Corp". (R. 28 ¶ 33, 35)

101. UCC § 9-502(a), provides, in relevant part, that "a financing statement is sufficient only if it

(3) indicates the collateral covered by the financing statement."

102. The seriously misleading standard NY UCC § 9-506 only applies to the financing statement

legal description and debtor's name in (b) [Financing statement seriously misleading.] Except as

otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the

name of the debtor in accordance with Section 9-503(a) is seriously misleading.

103. UCC § 9-502 (e) Contents of cooperative addendum. A cooperative addendum is sufficient

only if it satisfies subsection (a) and also:

> (1) if not filed simultaneously with the initial financing
> statement, identifies, by its file number, the initial
> financing statement to which the addendum relates;
> (2) indicates the street address of the cooperative unit;
> (6) indicates the name of the cooperative organization.

### D.      Did the Court err in the untimely incorporation and consideration of the controverted Griswold Affidavit of Possession?

### Preservation on Appeal:

104. This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary

judgment order and Tr. BKNYED00565 2020-06-02.

### Discussion:

105.Plaintiff-Appellants objections to the timeliness and validity, characterized as "doubts" about the Griswold Affidavit of Possession, were made in supplemental opposition and in the hearing.

106.The affidavit of possession (R. 37) consisted only of the bare affirmation of SLS's attorney who demonstrated no personal knowledge of the mortgage servicing documents and history surrounding Plaintiff-Appellants claims in recoupment. Such an affirmation by counsel is without evidentiary value and thus unavailing (Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 500; Israelson v Rubin, 20 AD2d 668, affd 14 NY2d 887; Lamberta v Long Is. R. R., 51 AD2d 730). The record contains no affidavit of an employee or of any eyewitness and no transcript of any examination before trial, Plaintiff-Appellant's preserved objection was made for an adjournment of the motion to permit any such examination; no identification of the hypothetical "other witnesses to the occurrence", with an accompanying statement as to the substance of their testimony and explanation for failure to submit affidavits from them, was proffered.

107."[a]ffidavits composed of hearsay do not satisfy Rule 56(e) and must be disregarded,"' 5 and that "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."This legal rule, m turn, is based upon Rule 56(e), which states that affidavits on a summary judgment motion "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence.

108. The COVID-19 pandemic was used to justify the use of an Affidavit of Possession rather than SLS being forced to produce a non-existent, destroyed or unenforceable note.

109. The Bankruptcy court provided no opportunity or hearing for Murray to oppose the affidavit in the proceedings.

110. This is ripe for abuse to remedy a deficiency in papers by employing a procedural basis to preclude the need to evidence claims of Secured Creditor, Servicer etc.

111. The only reason original notes are endorsed in blank is because the original lender did not know what sponsor was going to purchase them or what trust they would be going into.

112. The original lender, HSBC, a non-party to VRMTG Asset Trust, can not use a blank endorsement that is effective beyond the sponsor of the trust.

**E.    Did the Court err in its conclusions regarding the scope, extent and applicability of the Settlement Agreement between Plaintiff, SLS and Gross Polowy LLC?**

**Preservation on Appeal:**

113. This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary judgment order and Tr. BKNYED00567 2020-10-20.

**Discussion:**

114. Settlement agreement executed was constrained to the "Motions for Orders to Show Cause, including allegations of violations of the bankruptcy automatic stay violations father bankruptcy discharge injunction contempt of court action in bad faith and violation of the loss mitigation order." and not broad and comprehensive with respect to failure to be in compliance with all applicable law as a condition precedent to foreclosure or any of the "New Allegations" not considered in the Decision and Order"

115. The scope of the settlement doesn't include identity theft, fraud, dual tracking, mortgage servicer fraud or servicer as a convenience implications.

**F.   Did the Court err in its conclusions regarding Plaintiff's Tender of Payment in full made subject to a Payoff Statement prior to the bankruptcy petition, and independently whether tender of payment discharges the underlying debt and whether returned payment renders the underlying security interest unenforceable?**

**Preservation on Appeal:**

116. This issue was preserved by R. 37, the Bankruptcy Court's interlocutory summary judgment order. (R. 50-51)

117. This issue is preserved by Tr. BKNYED00565 2020-06-02 pg 10 lines 1-15, pg 18-19.

118. The issue is preserved for the record Tr. BKNYED00563 2019-07-22 page 16 line 1 to page 19 line 19.

**Discussion:**

119. Plaintiff-Appellant disputed the amount and delinquency of the mortgage, requested the payoff statement and tendered the undisputed amount. The full payoff was in full satisfaction of the dispute.

120. The Bankruptcy Court relies selectively on Plaintiff's exhibits of Defendant's conflicting and contradictory explanations of Plaintiff's Tender of Payoff Statement Payment, the implications of application of partial payment, any balance due being unsecured and the discharge of the debt by tender and release of collateral implications.

121. Nationstar claimed the payment was 5 days late and $309.78 short on account as result of the payment posting August 15, 2017.

122. Nationstar's letter (R. 41 Ex. B) to the DFS falsely explained that the payments had been received August 15, 2017, $309.78 short. (Ex. R) The returns receipts dated August 10, 2017

show representatives of both Gross Polowy LLC and Nationstar signed for the payments on August 10, 2017, making the payment complete, valid and not a short payoff.

123.12 CFR 226.10(a), Regulation Z sets down both the prompt crediting rule and the exception. "A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge?"

124. Under § 1026.36(c)(1)(i), a mortgage servicer must credit a payment to a consumer's loan account as of the date of receipt. This does not require that a mortgage servicer post the payment to the consumer's loan account on a particular date; the servicer is only required to credit the payment as of the date of receipt. Accordingly, a servicer that receives a payment on or before its due date (or within any grace period), and does not enter the payment on its books or in its system until after the payment's due date (or expiration of any grace period), does not violate this rule as long as the entry does not result in the imposition of a late charge, additional interest, or similar penalty to the consumer, or in the reporting of negative information to a consumer reporting agency.

125. § 1026.36(c)(1)(ii) controls the handling of partial payments. If a servicer receives a partial payment from a consumer, to the extent not prohibited by applicable law or the legal obligation between the parties, the servicer may take any of the following actions: Credit the partial payment upon receipt; Return the partial payment to the consumer; Hold the payment in a suspense or unapplied funds account.

126. Compliance with Part 419 Conduct of New York State Business Rules would require the servicer to apply partial payment.

127.The CFPB Interpretations refer to the "date of receipt" as the date that the "payment instrument or other means of payment reaches the mortgage servicer." An example is provided of a payment made by check, noting that payment is received when the servicer receives the check, not when the funds are collected. 9 Former Official Interpretations to Reg. Z, ¶ 36(c)(1)(i)-2; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 10 Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-1; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 11 Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-2; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 12 Former Official Interpretations to Reg. Z, ¶ 36(c)(2)-3; 73 Fed. Reg. 44,522, 44,614 (July 30, 2008). 13 15 U.S.C. § 1639f(a). 14Id. 15 15 U.S.C. § 1639f(b). 16 Reg. Z, 12 C.F.R. §§ 1026.36(c)(1)(i), 1026.36(c)(1)(iii). 15 USC § 1639f, 15 USC § 1666c.

128.UCC 3-603(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

129.The two New York statutes at issue are New York State Real Property Actions and Proceedings Law ("RPAPL") § 1921 and New York Real Property Law ("RPL") § 275. RPAPL § 1921 and RPL § 275 both require a mortgagee to execute a satisfaction of mortgage and arrange to have the satisfaction recorded within 30 days. Failure of the mortgagee to do so entitles the borrower to a penalty based on when the satisfaction was recorded. The amounts are $500 for satisfaction not recorded within 30 days, $1,000 for satisfaction not recorded within 60 days, and $1,500 for satisfaction not recorded within 90 days.

130. Nationstar and SLS's misrepresentations the full payoff date violate Title 18 of the United States Code § 656 and 894.

131. A tender of less than the amount owing did not destroy the tender. In Matzger v. Page, 62 Wash. 170, 113 P.254 (1911)

132. Failure to tender three days' interest did not destroy the tender. Kentucky Virginia Stone Co. v. Fortner, 159 Va. 234, 165 S.E. 401 (1932).

133. It is possible that parties obligated on negotiable instruments are unaware that tender of payment exists as a mechanism to stop interest and costs from running on an instrument after its maturity date. Tender of payment in the negotiable instruments setting has been ignored in legal literature.' Section 3-604 has not been the subject of commentary since the enactment of the Code. J. WHITE & R. SUMMERS, HANDBOOK OFTHE LAW UNDER THE UNIFORM COMMERCIAL CODE §§ 13-18, at 443 (1972) makes only a passing reference to tender of payment under § 3-604. For a general discussion of the law of tender, see Comment, The Law of Tender in Texas, 29 BAYLOR L, REv. 325 (1971).

**G.  Did the Court err in its conclusions that the "New Assertions" that Plaintiff raises in his Opposition and Supplemental Opposition to SLS's Motion for Summary Judgment do not amount to claims incorporated into the complaint through the Consolidated Motions against SLS in this adversary proceeding, and independently whether Plaintiff is entitled to amend claims in the Adversary Complaint to incorporate the "New Assertions"?**

**Preservation on Appeal:**

134. This issue was preserved by R. 50-51, the Bankruptcy Court's interlocutory summary judgment order and the Adversary Complaint R. 1 ¶ 15c, 50-51.

**Discussion:**

135. The "New Allegations" as characterized by the Bankruptcy Court are incorporated claims for relief having been incorporated by Plaintiff-Appellant's Opposition to Motion for relief from lien. (R. 1 ¶ 15c, 52-56)(EDNY BK 18-01141-ess Dkt 31 ¶ 24)

**Conclusion**

136. The equitable resolution of the mortgage contract should not have gone past the first NYS AG complaint, because if HSBC's response was indicative of an acknowledgement of a lack of a right to foreclose, they couldn't then sell a right they didn't possess.

For the reasons stated above, the District Court should reverse the Bankruptcy Court's Decision and Order on SLS's Motion for Summary Judgement.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Monday, May 10, 2021

By: _SEAN M MURRAY_
       SEAN M. MURRAY
       P.O. BOX 1110
       ALBANY, NEW YORK
       12201-1110 U.S.A.
       seanmurray@prodigy.net